Breitel, J. (concurring in result).
There is no doubt that the first and second causes of action are sufficient in alleging an invasion of privacy under what appears to be the applicable law in the District of Columbia (Pearson v. Dodd, 410 F. 2d 701, 704; Afro-American Pub. Co. v. Jaffe, 366 F. 2d 649, 653-654). TMs should be the end of this court’s proper concern with the pleadings, the only matter before the court being a motion to dismiss specified causes of action for insufficiency.
Thus it is not proper, it is submitted, for the court directly or indirectly to analyze particular allegations in the pleadings, once the causes of action are found sufficient, in order to determine whether they would alternatively sustain one cause of action *572 or another, or whether evidence offered in support of the allegations is relevant only as to one rather than to another cause of action. Particularly, it is inappropriate to decide that several of the allegations as they now appear are referable only to the more restricted tort of intentional infliction of mental distress rather than to the common-law right of privacy upon which the first and second causes of action depend. The third cause of action is quite restricted. Thus many of the quite offensive acts charged will not be actionable unless plaintiff succeeds in the very difficult, if not impossible, task of showing that defendants’ activities were designed, actually or virtually, to make plaintiff unhappy and not to uncover disgraceful information about him. The real issue in the volatile and developing law of privacy is whether a private person is entitled to be free of certain grave offensive intrusions unsupported by palpable social or economic excuse or justification.
'True, scholars, in trying to define the elusive concept of the right of privacy, have, as of the present, subdivided the common law right into separate classifications, most significantly distinguishing between unreasonable intrusion and unreasonable publicity (Restatement, 2d, Torts, Tent. Draft No. 13 [April 27, 1967], §§ 652A, 652B, 652D; Prosser, Torts [3d ed.], pp. 832-837). This does not mean, however, that the classifications are either frozen or exhausted, or that several of the classifications may not overlap.
Concretely applied to this case, it is suggested, for example, that it is premature to hold that the attempted entrapment of plaintiff in a public place by seemingly promiscuous ladies is no invasion of any of the categories of the right to privacy and is restricted to a much more limited cause of action for intentional infliction of mental distress. Moreover, it does not strain credulity or imagination to conceive of the systematic “ public ” surveillance of another as being the implementation of a plan to intrude on the privacy of another. Although acts performed in ‘ ‘ public ’ ’, especially if taken singly or in small numbers, may not be confidential, at least arguably a right to privacy may nevertheless be invaded through extensive or exhaustive monitoring and cataloguing of acts normally disconnected and anonymous.
*573 These are hut illustrations of the problems raised in attempting to determine issues of relevancy and allocability of evidence in advance of a trial record. The other allegations so treated involve harassing telephone calls, and investigatory interviews. It is just as important that while allegations treated singly may not constitute a cause of action, they may do so in combination, or serve to enhance other violations of the right to privacy.
It is not unimportant that plaintiff contends that a giant corporation had allegedly sought by surreptitious and unusual methods to silence an unusually effective critic. If there was such a plan, and only a trial would show that, it is unduly restrictive of the future trial to allocate the evidence beforehand based only on a pleader’s specification of overt acts on the bold assumption that they are not connected causally or do not bear on intent and motive.
It should be observed, too, that the right to privacy, even as thus far developed, does not always refer to that which is not known to the public or is confidential. Indeed, the statutory right of privacy in this State and perhaps the most traditional right of privacy in the “ common law sense ” relates to the commercialized publicity of one’s face or name, perhaps the two most public aspects of an individual (see Civil Rights Law, §§ 50, 51; Restatement, 2d, Torts, Tent. Draft No. 13 [April 27, 1967], § 652C).
There is still further difficulty. In this State thus far there has been no recognition of a common-law right of privacy, but only that which derives from a statute of rather limited scope (Civil Rights Law, §§ 50, 51; Flores v. Mosler Safe Co., 7 N Y 2d 276, 280; Roberson v. Rochester Folding Box Co., 171 N. Y. 538, 556-557). Consequently, this court must undertake the hazardous task of applying what is at present the quite different law of the District of Columbia. True, this may be the court’s burden eventually, if the case were to return to it for review after trial, especially if the plaintiff were to prevail upon such a trial. However, there is no occasion to advance, now, into a complicated, subtle and still-changing field of law of another jurisdiction, solely to determine before trial the relevancy and allocability among pleaded causes of action or projected but not yet offered items of evidence. It is not overstatement to say that *574 in the District of Columbia the law of the right of privacy is still inchoate in its development, perhaps more so than in many other jurisdictions that accept this newly coined common-law cause of action, despite unequivocal acceptance as a doctrine and extension by dictum to cases of intrusion (Pearson v. Dodd, supra, at p. 704).* In the absence of a trial record, the court should avoid any unnecessary extrapolation of what the District of Columbia Court of Appeals has characterized as “ an untried and developing area of tort law ” (Pearson v. Dodd, supra, p. 705).
Nor does Rager v. McCloskey (305 N. Y. 75) offer support for the excursion in this case into the allocation in advance of trial and an evidentiary record of the functional relevancy of evidence perhaps to be offered in the future and perhaps not. In the Bager case, plaintiff had urged throughout the proceedings an alternative, independent, and unsustainable legal theory based allegedly on the accordion doctrine of “ prima facie ” tort (see Morrison v. National Broadcasting Co., 24 A D 2d 284, 289-292, revd. on narrow grounds, 19 N Y 2d 453). Quite appropriately, although perhaps not necessarily, the court in sustaining the complaint pointed out that the cause of action could not survive on the alternative theory in the absence of allegation and proof of special damages. This was accomplished by a simple reference to the theory of “ prima facie ” tort and the patent vital omission of an allegation of special damages in the pleading. Notably, and so relevant to the policy to be followed in this case, the court otherwise limited its analysis of the pleading. Having found that the Bager complaint stated a cause of action against each of the defendants, the court declined to consider whether allegations of additional false statements, and recitals *575 of conspiracy, were still relevant or admissible on any further cause of action. It stated: “ Since, then, the complaint does state a cause of action against each of the defendants, it is immune from attack for insufficiency, even though it may contain additional allegations that are inadequate to charge any further cause of action. (See Abrams v. Allen, 297 N. Y. 52, 54; Advance Music Corp. v. American Tobacco Co., 296 N. Y. 79, 84; Abbey v. Wheeler, 170 N. Y. 122, 127.) Accordingly, we postpone for possible future consideration the question whether other allegedly false statements — attributed to one or another of defendants — may be ruled defamatory and slanderous per se, as well as the further question whether the recitals of conspiracy are sufficient to charge each of the defendants with liability for the acts of the others.” (Rager v. McCloskey, supra, at p. 80.)
The plaintiff, naturally enough, is trying to broaden his warrant, and defendant-appellant is correspondingly trying to narrow that warrant. But the eagerness of the parties in briefing hypothetical problems does not require an advisory opinion or a declaratory judgment by the highest court of the State without the benefit of a trial judge’s rulings on relevancy, and an Appellate Division’s review of those rulings on a trial record. There is no justification, on the present record, for giving an illiberal and restrictive scope to a cause of action based on the right of privacy as that right is likely to be defined under the applicable law of another jurisdiction.
The broad statements in the opinion of the Appellate Division can be met, as this court has done so often, by declaring *576 that they are not necessarily adopted in concluding that a cause or causes of action have been stated.
Accordingly, because of the prematurity of ruling on any other question but the sufficiency of the causes of action, I concur in result only.
Judges Sc-ileppi, Bebgan and Gibson concur with Chief Judge Fuld ; Judge Breitel concurs in result in an opinion in which Judges Burke and Jasen concur.
Order affirmed, etc.

 This is what the latest pronouncement from the Court of Appeals in the District Columbia has to say about this “new” tort, as applied to intrusion: “ Unlike other types of invasion of privacy, intrusion does not involve as one of its essential elements the publication of the information obtained. The tort is completed with the obtaining of the information by improperly intrusive means.
“ ‘ Intrusion ’ has not been either recognized or rejected as a tort in the District of Columbia. It has been recognized by a number of state courts, most recently by the New Hampshire Supreme Court in Hamberger v. Eastman [106 N. H. 107]. Hamberger found liable a defendant who eavesdropped upon the marital *575 bedroom of plaintiffs by electronic means, holding that ‘ the invasion of the plaintiffs’ solitude or seclusion * * * was a violation of their right of privacy.’
“We approve the extension of the tort of invasion of privacy to instances of intrusion, whether by physical trespass or not, into spheres from which an ordinary man in a plaintiff’s position could reasonably expect that the particular defendant should be excluded. Just as the Fourth Amendment has expanded to protect citizens from government intrusions where intrusion is not reasonably expected, so should tort law protect citizens from other citizens. The protection should not turn exclusively on the question of whether the intrusion involves a technical trespass under the law of property. The common law, like the Fourth Amendment, should [1] protect people, not places.’ ” (footnotes omitted).